# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2685
_____

Jessica Brown

*Plaintiff - Appellant*

v.

Diversified Distribution Systems, LLC

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: May 14, 2015
Filed: September 4, 2015
_____

Before RILEY, Chief Judge, BRIGHT and MURPHY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Jessica Brown brought this action against her employer, Diversified Distribution Systems, alleging that she was demoted and terminated in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. She also brought claims under two Minnesota employment statutes, Minn. Stat. § 181.933 and

Minn. Stat. § 181.961. The district court granted summary judgment for Diversified on all claims. We affirm in part and reverse in part.

## I.

Diversified is a supply chain company that acquires a variety of products for commercial retailers and other businesses. In 2002 Brown began working for Diversified as a customer service representative. She was later promoted to the position of backup account executive. Such "backup" account executives support account executives who are on sick leave or taking personal time. Unlike account executives, backups rarely interact directly with retailers. Backup employees are not assigned individual customer accounts, but they must develop familiarity with the accounts and perform support roles including training and systems development. Brown received excellent reviews as a backup account executive and displayed particular aptitude for training other employees.

In 2009 Brown was promoted from her backup position to account executive. Her promotion included three scheduled pay raises that were contingent on her performance meeting expectations. In contrast to her strong performance in her support role, Brown at first struggled as an account executive. Her performance reviews show that she repeatedly made serious recordkeeping errors that embarrassed Diversified and nearly caused major revenue loss. Because she was not meeting expectations, one of her scheduled pay raises was delayed by six months.

Brown took twelve weeks of FMLA leave in 2010 after receiving a breast cancer diagnosis. Her performance reviews noted that she had been unable to prove she could succeed as an account executive before she went on leave, but her managers wanted to give her another chance. Diversified provided Brown with additional training after she returned from leave, and her reviews in 2011 noted improvement in her work. In June 2011, Diversified was named "Vendor of the Year" by one of

its clients, Urban Outfitters, and Brown was specifically congratulated for her work. Brown's July 2011 performance review, the last one she received before going on pregnancy leave, was positive, noting that she "knows the system well" and had "identified the best way to work with each contact at each account." Although Brown's reviews still identified areas for improvement, the company granted her the delayed pay raise.

At the end of 2011 Diversified was purchased by a new owner, Jim Murphy. Around the same time, Susan Kostecky became Brown's supervisor in the account executive department. Murphy told his managers, including Kostecky, to rank their employees and discharge the lowest performers. The summary judgment record shows that on January 9, 2012, Kostecky met with Diversified's Human Resources Director, Mary Louise Pirkl, to discuss employee performance and a proposed reorganization of the account executive department. Kostecky and Pirkl determined that Brown was underperforming as an account executive, and they discussed moving her to a restructured backup account executive position. In contrast to the backup role Brown had originally occupied, the new position included significant training and account management responsibilities. It also offered pay and benefits equal to those provided to account executives.

In late January 2012 before Kostecky had told Brown about the new backup position, Brown informed Diversified that she was pregnant, that her pregnancy was high risk, and that she needed to attend frequent medical appointments during the work week. Diversified accommodated these appointments and allowed Brown to work from home at night to make up time she missed, enabling her to avoid taking FMLA leave before her child was born in June 2012. Given the high risk nature of Brown's pregnancy, Pirkl claims to have told Kostecky that they should wait to tell Brown about her reassignment until after she returned from leave to avoid causing additional stress.

In June 2012 Urban Outfitters again named Diversified its "Vendor of the Year." According to the Urban Outfitters purchasing manager, Brown provided the "highest level of service" in her role as account executive. Also around June of 2012 Chico's, one of Diversified's main retail clients, informed the company that it intended to take its business elsewhere. As a result Murphy requested that his managers reduce their payrolls by 10%. Kostecky sent Murphy a performance update on her team of account executives which identified three underperforming employees: Brown, Zac Litzow, and Muriel Otto. Management began discussing a number of options for these underperforming employees, including termination, but they did not implement a payroll reduction immediately.

Brown contacted Kostecky in August 2012 and asked to return to work early from her FMLA leave. Because she had difficulty finding child care, she requested permission to work from home for several weeks. Kostecky agreed and told Brown for the first time that she was being reassigned to the new backup position. Brown complained that she viewed the reassignment as a demotion. She returned to the office in September 2012 after working from home for several weeks.

In early September 2012, Murphy sent an email to his managers asking them to implement the 10% payroll reduction by the end of the month. Kostecky proposed terminating Litzow and Otto, two of her three underperforming employees. Even though Brown was also underperforming, her team had received an award for exceptional customer service shortly before she took her maternity leave. Kostecky proposed retaining Brown in the new backup role despite her underperformance as an account executive.

On October 4, 2012 Brown complained to a human resources employee named Rebecca Wolszon about her reassignment. She was also unhappy that the company had asked her to stop working from home on Mondays, an arrangement she had previously enjoyed. Wolszon testified in her deposition that she discussed Brown's

FMLA rights with her and thereafter relayed Brown's concerns to Human Resources Director Pirkl, who has denied knowledge of Brown's complaints. Brown also met with Kostecky on October 4 or 5 and complained that she should have been returned to her same job. Brown was fired on October 9, five days after complaining to Wolszon. Kostecky later testified that she decided to fire Brown instead of Litzow because he had a relationship with Talbots, an important retail client. According to Kostecky, the Talbots connection only became apparent to her around the time that Brown complained to human resources about her FMLA rights.

Later in October 2012, Brown submitted a written request to Diversified asking for the "truthful reason for [her] termination" pursuant to Minn. Stat. § 181.933. Brown thereafter received a letter from Diversified stating that she had been terminated because the loss of the Chico's account had required the company to make payroll reductions. Brown also submitted a written request for her personnel file under Minn. Stat. § 181.961. All parties acknowledge that she then received at least part of her personnel file, and no one disputes that she now has access to the complete file.

In December 2012 Brown brought this action against Diversified alleging that she had been demoted and terminated in violation of the FMLA. See 29 U.S.C. §§ 2601–2654. She also alleged that Diversified had failed to provide her with the truthful reason for her termination, in violation of Minn. Stat. § 181.933, and had refused to turn over her complete personnel file within seven working days, in violation of Minn. Stat. § 181.961. The district court granted summary judgment to Diversified on all claims and denied Brown's request for permission to file a motion for reconsideration.

-5-

II.

We review a grant of summary judgment de novo. Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Summary judgment is "appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Id.

The FMLA "entitles an employee to twelve weeks of leave from work during any twelve-month period if the employee meets certain statutory requirements." Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012). Two "subsections of the statute establish prohibited acts." Id. Section 2615(a)(1) "makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA," and section 2615(a)(2) "makes it unlawful for 'any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." Id. We have "recognized three types of claims arising under these two subsections"—entitlement, discrimination, and retaliation claims—and Brown brings all three types against Diversified. See id.

A.

Brown argues that Diversified denied her an entitlement under the FMLA by failing to restore her to the account executive position she held before she went on leave. An entitlement claim arises under § 2615(a)(1) when "an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act." Pulczinski, 691 F.3d at 1005. An employee who takes FMLA leave "is entitled, upon her return to work, to be restored to a position that is the same as, or substantially equivalent to, the position that she occupied when the leave began." Walker v. Trinity Marine Products, Inc., 721 F.3d 542, 544 (8th Cir. 2013); see 29

U.S.C. § 2614(a)(1). When an employee claims the denial of a benefit to which she is entitled under the FMLA, she "need not show that an employer acted with discriminatory intent." Pulczinski, 691 F.3d at 1005.

Brown alleged that upon return from maternity leave she was not restored to her position as account executive or to an equivalent position. Although Diversified does not dispute for the purpose of its motion for summary judgment that Brown's reassignment was "not equivalent" to her prior position, it argues that she does not have an entitlement claim because she was not prohibited from taking FMLA leave. Diversified misconceives Brown's claim. Brown does not claim that Diversified's actions interfered with her ability to take maternity leave but rather that Diversified failed to restore her to an "equivalent" position when she returned from leave. See Walker, 721 F.3d at 544. Brown's claim that Diversified denied her an equivalent position thus fits within the Pulczinski framework as a § 2615(a)(1) entitlement claim. See 691 F.3d at 1005. Moreover, Brown's entitlement claim is distinct from her discrimination claim, in which she alleges that Diversified took adverse action against her because she took maternity leave. See id. at 1005–06. Based on the facts in this record, we conclude that the district court erred in granting summary judgment to Diversified on Brown's entitlement claim.

B.

Brown also argues that Diversified discriminated against her for exercising FMLA rights when it demoted her to a backup position upon her return from leave. Discrimination claims arise under § 2615(a)(1) "when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA." Pulczinski, 691 F.3d at 1006. We have "considered FMLA discrimination claims under the McDonnell Douglas burden-shifting framework that is applied in Title VII cases." Id. at 1007. To establish a prima facie case of FMLA discrimination, "an employee must show: (1) that he engaged in

activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." Id.

The parties agree that Brown engaged in protected activity by requesting FMLA leave and that she suffered an adverse employment action when she was moved to a backup role upon her return from leave. They do dispute whether a "causal connection existed" between Brown's exercise of her right to take FMLA leave and Diversified's decision to reassign her. Pulczinski, 691 F.3d at 1007. The undisputed summary judgment record shows that Kostecky and Pirkl were "contemplating the transfer before" Brown requested FMLA leave, which calls into question any causal connection between the two. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (per curiam). Brown argues, however, that she can still show a causal connection because Kostecky and Pirkl had not made a final decision to reassign her before she requested FMLA leave. Her argument fails because the company's "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Id. We thus conclude that this "record does not support a prima facie case of FMLA discrimination." See Brown v. City of Jacksonville, 711 F.3d 883, 891–92 (8th Cir. 2013).

While Brown argues that Diversified has failed to produce any written business records proving that Kostecky and Pirkl discussed transferring her before she requested FMLA leave, she also has produced "no evidence to rebut" either Pirkl's affidavit or Kostecky's deposition. See Stewart v. Rise, Inc., 791 F.3d 849, 862 (8th Cir. 2015). Both of these witnesses stated that they had met to discuss Brown's transfer on January 9, 2012, weeks before she requested FMLA leave. Brown claims that the meeting never took place, relying on the testimony of two members of her

account team, John Dodd and Rachel Jordahl. Both employees testified that they did not know about the January 9th meeting, but both employees also testified that they were not involved in the decision to reassign Brown. We conclude that their lack of personal knowledge would prevent their testimony from establishing a triable issue of fact. See, e.g., Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983). The district court thus properly granted summary judgment to Diversified on the discrimination claim.

C.

Brown also argues that Diversified retaliated against her by terminating her five days after she had complained to human resources about whether her FMLA rights had been violated. A retaliation claim arises under § 2615(a)(2) if an employer takes "adverse action" against an employee who "opposes any practice made unlawful under the FMLA—for example, if an employee complains about an employer's refusal to comply with the statutory mandate to permit FMLA leave." Pulczinski, 691 F.3d at 1005–06. Diversified admits that Brown has established a prima facie retaliation case because she (1) engaged in protected activity when she complained that the company had violated her FMLA rights by assigning her to a backup position when she returned from leave, (2) suffered an adverse employment action when she was terminated, and (3) established a causal connection between the protected activity and the adverse employment action in that she was fired only five days after she complained about FMLA violations. See Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011).

Since Brown has met her prima facie burden on her retaliation claim, Diversified "must articulate a legitimate, non-retaliatory reason for its action." Wierman, 638 F.3d at 999. Diversified asserts that it fired Brown because it had lost

one of its biggest clients and needed to cut 10% of its payroll by terminating underperforming employees. This "legitimate, non-retaliatory reason" causes the burden to shift back to Brown to "identify evidence sufficient to create a genuine issue of material fact" on whether Diversified's "proffered explanation is merely a pretext for unlawful retaliation." Id. There are "at least two ways a plaintiff may demonstrate a material question of fact regarding pretext." Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc). A plaintiff may show that the employer's explanation is "unworthy of credence . . . because it has no basis in fact," or "by persuading the court that a prohibited reason more likely motivated the employer." Id.

Brown argues that the timing of her termination, which came just five days after she had complained that her FMLA rights were violated, indicates that a "prohibited reason more likely motivated" Diversified than a need to cut the payroll. Torgerson, 643 F.3d at 1047. Although "temporal proximity standing alone" is generally insufficient to establish pretext, viewed "within the context of the overall record, [it] may directly support an inference of retaliation, and it may also affect the reasonableness of inferences drawn from other evidence." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1122 (8th Cir. 2006), abrogated on other grounds by Torgerson, 643 F.3d at 1043, 1058; see Eliserio v. United Steelworkers of America Local 310, 398 F.3d 1071, 1079–80 (8th Cir. 2005). Here, because only five days elapsed between Brown's FMLA complaint and her termination, "temporal proximity provides strong support for an inference of retaliatory intent." Wallace, 442 F.3d at 1122.

Brown also asserts that Diversified's stated reason for firing Brown instead of Litzow was "unworthy of credence . . . because it has no basis in fact." Torgerson, 643 F.3d at 1047. Litzow had been scheduled for termination up until about the time

Brown complained to Wolszon. Kostecky testified that she decided to fire Brown instead of Litzow because he had a relationship with an important client, and that this relationship only became apparent to her around the time that Brown met with human resources. Brown nevertheless has identified evidence in the summary judgment record indicating that Litzow had been removed from the Talbots account months before Brown was fired, thus creating a dispute of fact. See Woods, 409 F.3d at 990.

We have previously concluded that where an employer has known about its stated reason for taking adverse action against an employee "for an extended period of time," but only acts after the employee engages in protected activity, the employer's earlier inaction supports an inference of pretext. Wallace, 442 F.3d at 1122. Litzow's relationship with Talbots predated Kostecky's plan to fire him, and Kostecky only offered Talbots as a reason for retaining Litzow after Brown had complained to human resources. A "fact finder could reasonably infer" that if Litzow's relationship with Talbots "alone had been the true motivation" for Brown's termination, her discharge "would not have followed so closely on the heels" of her FMLA complaint. Id. Brown has also pointed to evidence that calls into question the credibility of Kostecky's testimony regarding the demotion and firing. We thus conclude based on these factual disputes and the temporal proximity between Brown's complaint and her termination that she has identified genuine issues of material fact on whether "a prohibited reason, rather than the employer's stated reason, actually motivated" her termination. Torgerson, 643 F.3d at 1047.

III.

Finally, Brown argues that the district court also erred in granting summary judgment to Diversified on her two state law employment claims. She asserts that Diversified violated Minn. Stat. § 181.961 by failing to provide her with a copy of her

complete personnel record within seven days, but she does not appear to dispute that she subsequently acquired the entire file. To avoid summary judgment on a § 181.961 claim, a plaintiff must produce some evidence of lack of compliance or actual damages. See Carpenter v. Nelson, 101 N.W.2d 918, 921 (Minn. 1960); see also Wilson v. Polaris, 1998 Minn. App. LEXIS 1220, at *3–6 (Minn. Ct. App. 1998). Brown does not identify any records that have not been made available at this time. Although Brown asserts she was damaged by forcing Diversified to comply with the statute, she provides no evidence to support this claim. Under Minnesota law, "the controlling principle governing actions for damages is that damages which are speculative, remote, or conjectural are not recoverable." Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977). Because the "record contains no proof beyond speculation" that Brown was actually damaged by Diversified's § 181.961 violation, the district court properly granted summary judgment to Diversified on this claim. See Storage Tech. Corp. v. Cisco Sys., Inc., 395 F.3d 921, 928 (8th Cir. 2005).

Brown also maintains that Diversified violated Minn. Stat. § 181.933 because it did not provide her with the truthful reason for her termination after she requested it. Section 181.933 provides that an "employee who has been involuntarily terminated may . . . request in writing that the employer inform the employee of the reason for the termination." Minn. Stat. § 181.933. The employer must then "inform the terminated employee in writing of the truthful reason for the termination." Id. An employer is "only liable under § 181.933 to 'an employee injured by a violation of section 181.932.'" Nichols v. Metro. Ctr. for Indep. Living, 50 F.3d 514, 517 (8th Cir. 1995) (citing Minn. Stat. § 181.935). Since Brown never alleged a "whistleblower retaliation claim" under § 181.932, see id. at 516, Diversified argues that she also failed to prove a § 181.933 claim.

-12-

Although Brown did not plead a § 181.932 claim, "a party may obtain relief on a theory of recovery not expressly [pled] in the complaint but proved at trial, when it is based on the same wrongful act that was [pled], and when the opposing party has had fair notice." Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989); see Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 714 (8th Cir. 1979). The same act underlying Brown's FMLA retaliation claim would also support a § 181.932 claim. The elements of a § 181.932 claim track the elements of an FMLA retaliation claim, and "Minnesota courts apply the familiar three-part McDonnell Douglas analysis in resolving claims of retaliatory discharge under § 181.932." Nichols, 50 F.3d at 516. Furthermore, Brown pled a § 181.933 claim in her complaint, so here the "opposing party has had fair notice." Morgan Distrib., 868 F.2d at 995. Given the similarity of FMLA retaliation and § 181.932 claims, we conclude that a genuine issue of material fact exists on whether Brown's termination letter provided the "truthful reason" for her discharge because a dispute similarly exists on whether Diversified retaliated against her for exercising her FMLA rights. See Minn. Stat. § 181.933. The district court thus erred in granting summary judgment to Diversified on the § 181.933 claim.

IV.

For these reasons, we now

1. affirm the summary judgment granted to Diversified on Brown's discrimination and Minn. Stat. § 181.961 claims,

2. reverse summary judgment in favor of Diversified on Brown's entitlement, retaliation, and Minn. Stat. § 181.933 claims, and

3. remand for further proceedings not inconsistent with this opinion.

BRIGHT, Circuit Judge, concurring.

I am pleased to concur in the majority opinion with brief comments for the benefit of the district judge and the parties on further proceedings.

First, in my view, Brown's supposed "discrimination" claim under the FMLA was not properly raised on appeal. Brown provided perfunctory arguments regarding a "discrimination" claim, but ultimately concluded her claim is properly construed as an "entitlement" and not a "discrimination" claim. (App. Br. 39, 43-44, 47). Therefore, I would affirm the district court's dismissal of Brown's discrimination claim without further discussion. See Rotskoff v. Cooley, 438 F.3d 852, 854-55 (8th Cir. 2006) (holding a failure to develop an issue in the briefs is equivalent to an abandonment of the issue for failure to provide a reason for a contention).

Second, on remand, Brown's "entitlement" claim is not governed by the McDonnell Douglas burden-shifting framework. See, e.g., Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (8th Cir. 2002) (quoting King v. Preferred Tech. Grp., 166 F.3d 887, 891 (7th Cir. 1999) (noting that when proving an "entitlement" claim " '[t]he intent of the employer is immaterial' "). Instead, Brown is only required to show "she was entitled to the benefit denied"–here, restoration following leave. See, e.g., Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (quoting Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003). Here, when the facts are taken in the light most favorable to Brown, Brown has shown a strong prima facie case.

Third, during the majority's analysis of Brown's "discrimination" claim, the majority references an alleged discussion between Kostecky and Pirkl on January 9, 2012, asserting "[t]he undisputed summary judgment record shows that Kostecky and

-14-

Pirkl were 'contemplating the transfer before' Brown requested FMLA leave." (Maj. Op. at 3, 8 (citation omitted)).

To the extent facts regarding the alleged January 9, 2012 discussion are relevant to either Brown's "entitlement" or "retaliation" claim, the testimony of both Kostecky and Pirkl is subject to credibility findings by the jury as acknowledged by the majority. (See id. at 11 ("Brown has also pointed to evidence that calls into question the credibility of Kostecky's testimony"); see also Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)) (" 'Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' "). In particular, the following evidence undermines the credibility of both Kostecky and Pirkl regarding the January 9, 2012 meeting:

1. Between January 9, 2012 and the date Brown informed Diversified she would need FMLA leave, Brown was never told she would be moved to a back-up position.
2. There is no written record that the January 9, 2012 meeting occurred, which is uncommon for a company like Diversified.
3. It is unusual that Dodd (Brown's "dotted-line" supervisor) and Jordahl (Brown's replacement) were not notified of Jordahl's promotion prior to Brown's FMLA leave.
4. The evidence indicating Litzow was removed from the Talbots account calls into question all of Kostecky's testimony regarding the demotion and firing of Brown.

5. Urban Outfitter's accolades indicating Brown provided the "highest level of service" in her role as account executive undermines any indication that in January 2012 Brown was "underperforming" as an account executive.

———————————————