# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1554
_____

Margaret Corkrean

*Plaintiff - Appellant*

v.

Drake University; Gesine Gerhard

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: October 18, 2022
Filed: December 13, 2022

_____

Before SMITH, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Margaret Corkrean, a former employee of Drake University (Drake), brought this action against Drake and her former supervisor, Gesine Gerhard (collectively, Appellees), after her 2019 termination. Corkrean alleged disability discrimination, hostile work environment, and retaliation under both the Americans with Disabilities Act (ADA) and the Iowa Civil Rights Act (ICRA), as well as retaliation and discrimination based on the exercise of her rights under the Family Medical Leave

Act (FMLA).  The district court[1] granted summary judgment in favor of Appellees on all of Corkrean's claims.  On appeal, Corkrean challenges the district court's grant of summary judgment on her retaliation claims under the FMLA, ICRA, and ADA, as well as her discrimination claim under the FMLA.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

We state the facts in the light most favorable to Corkrean.  See Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010).  Corkrean worked for Drake for 28 years, the last 16 of which as the Budget and Office Manager for the College of Arts and Sciences (the College).  In this role, Corkrean managed the operating budget for many departments, oversaw the collection and recording of personnel data, and handled faculty appointments and payroll.  Given the importance of this position, Corkrean reported directly to the Dean of the College.  In 2004, Corkrean was diagnosed with multiple sclerosis (MS), as well as chronic back and neck pain.  Despite these diagnoses, she was able to work well with Deans of the College for many years without needing to file formal FMLA paperwork.

Appellee Gerhard became the Dean in July 2018.  From the start, Corkrean and Gerhard were at odds.  As early as the second week of August, Gerhard was in contact with Drake's provost, Sue Mattison, regarding the "challenges" of working with Corkrean.  In addition to Gerhard's dissatisfaction with Corkrean's performance deficiencies, much of the initial animosity between Corkrean and Gerhard surrounded Corkrean's erratic work schedule—a schedule partially related to Corkrean's MS.  Importantly, however, Gerhard was not aware of the MS diagnosis until at least the middle of September 2018.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

Just before Gerhard found out about Corkrean's MS, a Drake faculty member complained to Provost Mattison about Corkrean, alleging payroll issues and poor communication. The next day, Gerhard met with Corkrean to discuss attendance problems. When Corkrean explained that she spent time out of the office for her medical needs, Gerhard allegedly told Corkrean that she "did not care that [Corkrean] had MS," and that Corkrean needed to be in the office during regular hours. Days later, Corkrean complained to human resources (HR) that Gerhard was harassing her. One of Drake's HR representatives, Deb Wiley, responded by giving Corkrean FMLA paperwork and recommending that Corkrean communicate with Gerhard. Wiley's actions were not compliant with Drake's harassment-complaint policies, which required Wiley to inform Corkrean of her options under the university's complaint-handling procedures. Corkrean then completed the FMLA certification paperwork for the first time, which Drake approved without issue. After September 2018, Corkrean understood that she needed to inform Gerhard of FMLA absences in advance.

The relationship between Gerhard and Corkrean continued to sour. Throughout late 2018, Corkrean emailed Gerhard on multiple occasions stating that she would be late for work. Sometimes she gave reasons, but occasionally she did not communicate with Gerhard at all. At least once, Corkrean took unapproved time off to work another job for the Iowa Cubs, the local professional baseball team.

Gerhard often met with Corkrean to discuss performance deficiencies and unexcused absences, and almost every time, Corkrean secretly recorded the meeting. On January 3, 2019, at one such meeting, Gerhard met with Corkrean to explain her concerns that Corkrean communicated unprofessionally with staff, often missed deadlines, made errors, and was often late or absent from work. Following this meeting, Corkrean again complained to Wiley that Gerhard was harassing her, and she further explained her intention to meet with an employment lawyer. At the end of the month, Provost Mattison emailed Drake's HR Director to say, "I'd like to ask that you, [Gerhard], Ann, and I work to find a time to meet and talk about performance issues for Margaret Corkrean. [Gerhard] and I need to understand

-3-

FMLA implications while still providing [Gerhard] the budget management she must have to run the college." Throughout early 2019, Corkrean and Gerhard continued to meet about missed deadlines and budget-related issues.

In mid-June 2019, Corkrean made additional harassment complaints against Gerhard. On June 26, 2019, Gerhard provided Corkrean with a memorandum raising concerns about Corkrean making mistakes in her work, missing deadlines, having inconsistent attendance, and taking vacation time without prior approval. The memo also listed expectations for improvement. In a June 28th follow-up meeting, Gerhard emphasized that her attendance concerns did not include protected FMLA or medical-related absences. On July 10, 2019, Corkrean filed a formal harassment complaint against Gerhard with Drake's HR Department. Drake failed to formally investigate it, contrary to university policy.

Instead, on July 16, 2019, in response to the complaint, Wiley met with Corkrean to discuss Corkrean's FMLA leave and performance deficiencies. Also on that date, Drake provided Corkrean with a performance memorandum. Specifically, it addressed (1) Corkrean sending Drake HR her FMLA tracking spreadsheet for HR to compare with Gerhard's; (2) Corkrean notifying both Gerhard and Wiley via email of her need for FMLA leave, including the number of hours; (3) Drake HR reminding Corkrean that she would not be penalized for using qualifying FMLA leave, and again emphasizing her need to communicate with Gerhard in advance; and (4) Drake HR reminding Corkrean that she should promptly notify them if she believed that she had been retaliated against for raising concerns about her FMLA usage. During the meeting between Wiley and Corkrean, Wiley stated that these steps were intended to address Corkrean's formal harassment complaint. Corkrean responded that she thought the plan was "good." As Wiley transitioned to the subject of Corkrean's performance deficiencies, she stated, "I want to make it obvious to you that I am separating out the FMLA with the performance." Wiley then discussed the rest of the performance memorandum, which listed these performance issues, outlined an improvement plan, described FMLA procedures, and warned that "failure to achieve immediate and sustained

-4-

improvement in [Corkrean's] performance could result in further disciplinary action."

On September 10, 2019, Corkrean filed a complaint with the National Labor Relations Board (NLRB), alleging unfair labor practices. About a month later, on October 7, 2019, Gerhard and Wiley terminated Corkrean's employment. In the termination meeting, Gerhard explained that the reasons for termination were Corkrean's ongoing performance deficiencies and failure to improve following the July 16th meeting. Gerhard provided Corkrean with a memorandum detailing her continued mistakes, dismissive attitude toward these mistakes, and continued unapproved non-FMLA absences from work.

Since her termination, Corkrean has admitted to several of the documented performance deficiencies including failing to pay faculty members the appropriate amounts. Further, she does not challenge the Appellees' allegations that she was often late to work, missed deadlines, took unapproved time off for personal reasons, frequently failed to communicate why she would be absent, and did not always fill out FMLA paperwork despite repeated requests for her to do so. Additionally, Corkrean does not dispute that the Appellees never denied her FMLA leave.

Following her termination, Corkrean filed two civil rights complaints with the Iowa Civil Rights Commission before filing a lawsuit in Iowa state court against the Appellees. Corkrean asserted a variety of claims: disability discrimination, age discrimination, hostile work environment, and retaliation under the ICRA; failure to accommodate, disability discrimination, hostile work environment, and retaliation under the ADA; and failure to provide leave, interference, discrimination, and retaliation under the FMLA. Appellees removed the suit to federal court. In the district court, Corkrean voluntarily dismissed her age discrimination and hostile work environment claims under the ICRA as well as her failure to accommodate claim under the ADA. Appellees then filed a motion for summary judgment on Corkrean's remaining claims. At the hearing on the motion for summary judgment,

Corkrean conceded that her FMLA interference claim lacked merit. Subsequently, the district court granted summary judgment on Corkrean's remaining claims.

The district court first considered Corkrean's ICRA and ADA disability discrimination claims. It reasoned that the Appellees were entitled to summary judgment on these claims because (1) Corkrean presented no direct evidence of discrimination, (2) in the absence of direct evidence, Corkrean could not establish a prima facie case because she "point[ed] to no evidence connecting her [MS] diagnosis or related back and neck problems to her termination," and (3) even if she could establish a prima facie case, the Appellees offered a legitimate, non-discriminatory reason for her termination, and Corkrean offered no evidence of pretext. Next, the district court evaluated Corkrean's hostile work environment claims under the ICRA and ADA. It granted summary judgment on both claims, reasoning that "Corkrean point[ed] to no evidence indicating harassment based on a protected characteristic or evidence that any harassment she experienced was severe or pervasive."

Then the district court evaluated Corkrean's FMLA claims. On the retaliation claim, the district court reasoned that the Appellees were entitled to summary judgment because Corkrean could not establish a prima facie case. More specifically, she "fail[ed] to point to evidence demonstrating a causal connection between [her] FMLA leave and her termination." The district court likewise dismissed Corkrean's FMLA discrimination claim, reasoning that she had no evidence creating an inference of discrimination based on her FMLA absences. Finally, the district court evaluated Corkrean's retaliation claims under the ICRA and ADA. It found that the Appellees were entitled to summary judgment on these claims as well because Corkrean could not establish a prima facie case of retaliation. Specifically, she could not establish a causal connection between her protected activities and termination. Further, the district court held that even if Corkrean could establish such a prima facie case, her claims nevertheless must fail because she offered no evidence to indicate that Appellees' proffered neutral reasons for her termination were pretextual. Corkrean appeals the district court's grant of summary

judgment only as to her retaliation claims (under the ICRA, ADA, and FMLA) and her discrimination claim under the FMLA.

## II.

"We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party." Wages v. Stuart Mgmt. Corp., 798 F.3d 675, 679 (8th Cir. 2015). "Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007). Importantly, the "mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989). On appeal, this Court "may affirm a district court's grant of summary judgment on any basis supported by the record." Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 913 (8th Cir. 2007). We address each of Corkrean's claims in turn.

## A.

First, we address Corkrean's FMLA claims. The FMLA entitles an eligible employee to 12 workweeks of leave during a 12-month period if she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The FMLA "makes it unlawful for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise' rights provided under the FMLA." Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012) (quoting 29 U.S.C. § 2615(a)(2)). It also makes it unlawful for "any employer to discharge or in

any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Pursuant to the FMLA's mandates, an employee can bring three types of FMLA claims against her employer: interference, retaliation, and discrimination. Pulczinski, 691 F.3d at 1005-06.

On appeal, Corkrean brings both a retaliation and a discrimination claim against the Appellees. "Whether characterized as a 'discrimination' claim under § 2615(a)(1), or as a 'retaliation' claim under § 2615(a)(2), we require proof of the employer's discriminatory intent." Brown v. City of Jacksonville, 711 F.3d 883, 891 (8th Cir. 2013) (citations omitted). Such "proof may come from direct evidence or indirect evidence using the McDonnell Douglas[2] burden-shifting framework." Id. (citation omitted). Below, the district court held that Corkrean had no direct evidence of discrimination, and she does not challenge that holding on appeal.

Thus, for both of her FMLA claims, Corkrean must rely on indirect evidence under the McDonnell Douglas burden-shifting framework. Under this framework: (1) a claimant must first establish a prima facie case, (2) then the burden shifts to the employer to articulate "a legitimate, [nondiscriminatory] reason for the adverse employment action," and finally (3) the burden shifts back to the claimant to "demonstrate that the employer's proffered reason is pretextual." Mitchell v. Iowa Prot. & Advoc. Servs., Inc., 325 F.3d 1011, 1013 (8th Cir. 2003) (citations omitted). The elements of a prima facie case for both discrimination and retaliation are essentially the same. Compare Pulczinski, 691 F.3d at 1007 ("To establish a *prima facie* case of FMLA discrimination, an employee must show: (1) that he engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action."), with Scruggs v. Pulaski Cnty., 817 F.3d 1087, 1094 (8th Cir. 2016) (holding that, to establish a prima facie case of FMLA retaliation, an employee must show that: (1) "she engaged in a statutorily protected activity," (2) the employer "took an adverse action against her, and"

_____

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-8-

(3) "there was a causal connection between the adverse action and the protected activity"). The only major difference is how the claimant characterizes the protected activity.

The district court held that Corkrean's FMLA claims failed because she could not establish a prima facie case for either claim. We assume without deciding that Corkrean has presented a prima facie case for both claims and turn, as we often do, directly to the question of pretext. See, e.g., Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc., 826 F.3d 1149, 1162 (8th Cir. 2016) (assuming without deciding that FMLA claimant "presented a prima facie case of discrimination and turn[ing] to the issue of pretext"); Chappell v. Bilco Co., 675 F.3d 1110, 1117 (8th Cir. 2012) (assuming that FMLA claimant established a prima facie retaliation case and moving to an analysis of pretext, even after deciding that the claimant "did not establish a prima facie case"). Indeed, in cases such as this one, "[b]ecause the record has been fully developed in conjunction with the motion for summary judgment, we [can] turn directly to the ultimate question whether there is a submissible case of discrimination *vel non*." Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1091 (8th Cir. 2014).

Here, the Appellees have established a robust, well-documented set of legitimate reasons for Corkrean's termination—and Corkrean does not dispute them. These reasons include a plethora of performance deficiencies such as failing to pay staff members the appropriate amounts and missing deadlines, as well as non-FMLA tardiness and attendance problems. All these issues continued throughout Corkrean's year-long tenure under Gerhard, despite a months-long attempted improvement process. Thus, the determinative question on Corkrean's FMLA claims is whether she can show that these legitimate reasons for her termination are pretextual.

Under our precedent, there are two primary methods by which a claimant can raise a material fact question on the issue of pretext. Brown v. Diversified Distrib. Sys., LLC, 801 F.3d 901, 909 (8th Cir. 2015). First, she "may show that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact.'"

Id. (alteration in original) (citation omitted).  Second, she can "persuad[e] the court that a prohibited reason more likely motivated the employer."  Id. (citation omitted).  Corkrean has conceded that she cannot show that the Appellee's explanation has no basis in fact.  Thus, she must rely on the second avenue, under which:

> The employee must demonstrate "that sufficient evidence of intentional retaliation [or discrimination] exists for a jury to believe [her] allegations and find that the proffered explanation was not the true motivating explanation." . . .  An employee may prove pretext by demonstrating . . . that [she] received a favorable review shortly before [s]he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

Stallings v. Hussmann Corp., 447 F.3d 1041, 1052 (8th Cir. 2006).

Although temporal proximity between protected activity and adverse employment action can also be evidence of pretext, it alone is generally insufficient.  Brown, 801 F.3d at 909.  Moreover, "evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity."  Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002); see also Wierman v. Casey's Gen. Stores, 638 F.3d 984, 1001 (8th Cir. 2011) (stating that a case built on temporal proximity "is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive").

Here, the only evidence of pretext Corkrean provides is: (1) a tenuous temporal connection between her harassment complaints and negative performance reviews; (2) a one-month temporal connection between her filing a NLRB complaint and her termination; and (3) Drake's failure to follow its harassment-complaint policies.  Assuming that Corkrean's harassment complaints constitute protected activity, the temporal proximity argument is severely undercut by the fact that Gerhard was complaining about Corkrean's performance deficiencies at least a

month before Corkrean even told Gerhard about her MS and need for FMLA leave. See Smith, 302 F.3d at 834. Additionally, the harassment complaints coincided temporally with Corkrean's poor performance and non-FMLA attendance issues. See Wierman, 638 F.3d at 1001. Further, assuming that the NLRB complaint constitutes protected activity, the one-month lag between Corkrean's complaint and her termination—especially given the interim performance deficiencies—seriously detracts from any finding that Corkrean's termination was related to her exercise of any protected activity. See Lissick v. Andersen Corp., 996 F.3d 876, 886 (8th Cir. 2021) (describing line of FMLA cases requiring temporal proximity to be "very close" to even create an inference of causation sufficient for prima facie case); see also Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) ("[A] a one-month or two-month lag is too long absent other evidence.").

Drake's failure to follow its harassment-complaint policies is a closer question. It is true that an employer's "deviat[ion] from its policies" can raise a material fact question on the issue of pretext. Stallings, 447 F.3d at 1052. However, here, Drake's deviation from its harassment-complaint policies was only slight. For example, when Corkrean lodged a formal harassment complaint, although Drake did not conduct a formal investigation as required, HR did develop an action plan to address Corkrean's concerns. Further, Wiley met with Corkrean to go over the plan and emphasized to her that the plan was intended to address her complaint. Corkrean then told Wiley that the plan was "good." On this record, we cannot say that Drake's technical non-compliance with its harassment-complaint policies is sufficient grounds for a finding of pretext. This conclusion is buttressed by the following: Drake has a robust, well-documented collection of non-discriminatory reasons for Corkrean's termination; Drake informed Corkrean in writing multiple times of what she needed to do to improve, and she failed to do so every time; Drake has never wavered in its explanation for Corkrean's termination; Corkrean does not dispute the alleged deficiencies; and an employee who made similar mistakes as Corkrean, but who did not have FMLA leave, was also terminated. Even further, Corkrean was never punished for taking FMLA leave, and Gerhard and HR personnel were always careful to separate performance and unexcused attendance issues from

FMLA leave. See Malloy, 756 F.3d at 1091 (finding that prior use of FMLA leave "without repercussions" undermined an inference of discrimination).

Crucially, an employee who exercises her rights under the FMLA "has no greater protection against termination for reasons unrelated to the FMLA than she did before" doing so. Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 958 (8th Cir. 2012). "Otherwise, a problem employee on thin ice with the employer could effectively insulate herself from discipline by engaging in protected activity." Malloy, 756 F.3d at 1091. It is undisputed that Corkrean's employment record under Gerhard was replete with performance deficiencies and unexcused attendance issues. Thus, Corkrean's termination was justified, and there is insufficient evidence of pretext to raise a jury question. See, e.g., Brandt v. City of Cedar Falls, 37 F.4th 470, 475-80 (8th Cir. 2022) (holding that FMLA claimant failed to meet her burden of demonstrating pretext when "[s]he testified that she believed [her supervisor] may have instructed staff to find errors in her work, and she began receiving negative performance evaluations for the first time since beginning her employment" because there was no evidence "demonstrating that [her] documented performance deficiencies were inaccurate"); Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010) ("Because an employee 'cannot claim protection from the FMLA for disciplinary action . . . as a result of absences that are not attributable to [her] serious health conditions,' sufficient unexcused absences may justify her discharge." (alterations in original)). Therefore, we hold that Corkrean's FMLA claims fail as a matter of law because she has presented insufficient evidence of pretext.

B.

We now turn to Corkrean's retaliation claims under the ADA and ICRA. ADA and ICRA retaliation claims based on indirect evidence follow the same burden-shifting framework as those under the FMLA, and these claims are often considered together. See, e.g., Pulczinski, 691 F.3d at 1007 ("We affirm the dismissal of [plaintiff]'s FMLA claim . . . for substantially the same reasons that we

affirm the dismissal of his ADA claim. . . . [He] presented insufficient evidence to show that [his employer's] explanation was pretextual."); <u>Brandt</u>, 37 F.4th at 480-81 (affirming dismissal of FMLA retaliation and ICRA claims when claimant offered no evidence of pretext); <u>Mitchell</u>, 325 F.3d at 1015 (analyzing prima facie case of ADA retaliation, and then summarily stating that "since claims under the ICRA are dealt with by applying the standards relevant to claims under the ADA, [claimant's] ICRA claim must also fail" (citation omitted)). Moreover, Corkrean's ADA and ICRA retaliation claims are based on the same grounds as her FMLA retaliation claim.

Here, then, even assuming that Corkrean can establish a prima facie case of retaliation under either the ADA or ICRA, her claims fail at the same hurdle as described above: Corkrean does not have sufficient evidence to raise a genuine issue of material fact regarding pretext. Thus, Corkrean's ADA and ICRA claims also fail as a matter of law.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____