# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1192
_____

Joseph Carter

*Plaintiff - Appellant*

v.

Atrium Hospitality

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 12, 2021
Filed: May 17, 2021
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

KELLY, Circuit Judge.

Joseph Carter was a Front Desk Clerk at the Sheraton Hotel in West Des Moines, Iowa. In 2017, Atrium Hospitality, which manages the hotel, terminated Carter's employment after an internal investigation found that he allowed a hotel key card to fall into the hands of unauthorized guests. Shortly thereafter, Carter filed a complaint with the Iowa Civil Rights Commission (ICRC). He later filed suit in state

court asserting claims for race discrimination, failure to promote, and hostile work environment in violation of the Iowa Civil Rights Act (ICRA). See Iowa Code § 216.6(1)(a) (2018). Atrium removed the case to federal court on the basis of diversity jurisdiction, and the district court[1] subsequently granted summary judgment in favor of Atrium on each of Carter's claims. Carter now appeals.

I.

Atrium hired Carter as a Front Desk Clerk in March 2015. In that role, he was responsible for checking guests in and out of the hotel, issuing room keys, and resolving guest requests. Carter, a Black man, says that he repeatedly experienced race discrimination and harassment during his employment with Atrium. As evidence, he points to racial slurs made by nonsupervisory employees at the hotel as well as hiring decisions that resulted in non-Black applicants being chosen to fill positions he applied for.

In a letter attached to his ICRC complaint, Carter states that maintenance workers at the hotel persisted in calling him "boy" the "entire time" he worked there, despite his repeated complaints to management. The record also shows that, on January 16, 2016, an anonymous caller informed Atrium's Ethics Line that another Front Desk Clerk, Matt Glenn, had called Carter a "stupid n---er" during a recent argument. Atrium interviewed Carter as part of its investigation into this incident. Notes from the interview state that, although Carter heard Glenn use the word "n---er," it was "not towards anyone and he was probably repeating it because [Carter] sa[id] it sometimes." When asked whether any other Atrium employee had ever called him "a derogatory name," Carter responded, "No." Because Carter acknowledged using the n-word, Atrium issued both him and Glenn written disciplinary write-

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

-2-

ups at the conclusion of the investigation for using "foul language" that "created a hostile work environment."

In January 2017, Atrium received another anonymous complaint of race discrimination through the Ethics Line. The caller alleged that Atrium "treat[s] Black employees differently than others. This is shown by write-ups and cutting hours." Atrium spoke with Carter as part of its investigation into the complaint. He expressed frustration that Atrium had trained him to carry out the responsibilities of the Night Auditor position yet provided few opportunities for him to perform that role. It is undisputed, however, that Carter was not a Night Auditor and instead merely filled in from time to time for the person who held that role.

During Carter's deposition, he brought up several additional instances of nonsupervisory Atrium employees calling him racial slurs during 2016 and 2017. None of these incidents are mentioned in his ICRC complaint. Carter was unable to provide specifics about these incidents, but he claims that maintenance employees repeatedly used language such as "porch monkeys," "lazy n---ers," and "cotton picking" around him, despite him reporting their comments to management. Carter's Manager as well as the hotel Front Desk Manager, Human Resources Director, and General Manager all denied hearing complaints about any Atrium employee using racial slurs at the West Des Moines Sheraton, including against Carter.

In addition to experiencing racial slurs during his employment with Atrium, Carter asserts the company engaged in discriminatory hiring practices. At issue are the Assistant Front Office Manager positions Carter applied for in 2016. He contends his Manager told him that Atrium would not promote him to Assistant Front Office Manager because he was Black. Atrium indeed hired three other individuals for the positions, none of whom are Black, rather than promoting Carter.

The following year, in April 2017, Atrium terminated Carter's employment after determining that he was responsible for allowing a hotel key card to come into the possession of unauthorized guests. On April 16, 2017, a Domino's Pizza deliveryman arrived at the West Des Moines Sheraton to deliver a pizza to Room 617. When he was unable to get in touch with the room's occupants, the deliveryman asked the Front Desk Manager to call them. But the hotel's booking software revealed that the room was neither occupied by nor reserved for any Sheraton guest, and was in fact marked out of service. When a young girl came down to the lobby to collect the pizza, hotel security followed her and observed her entering Room 617. The Front Desk Manager called the police, and law enforcement discovered a man and two girls in the room as well as evidence of illegal drug use.

During Atrium's investigation into the incident, Carter admitted that he made a key card for the room despite it not being booked, marked the room out of service, and took the key card off hotel premises. A report generated by Atrium's key system revealed that the key the unauthorized guests used to access Room 617 was the same one generated by Carter. At the conclusion of its investigation, Atrium terminated Carter's employment. He acknowledged during his deposition that Atrium fired him over the key incident.

On May 10, 2017, Carter filed a complaint with the ICRC alleging harassment, failure to promote, and wrongful termination. After pursuing his claims before the ICRC, he filed suit in Iowa state court. Atrium removed the case to federal court, and the district court subsequently granted summary judgment in Atrium's favor.[2]

_____

[2]Carter had also alleged retaliation but voluntarily dismissed that claim after the parties completed summary judgment briefing.

## II.

We review the district court's grant of summary judgment de novo, drawing all reasonable inferences in Carter's favor. Turner v. XTO Energy, Inc., 989 F.3d 625, 627 (8th Cir. 2021). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up) (quoting Fed. R. Civ. P. 56(e)).

## III.

Carter asserts claims under the ICRA, which prohibits employers from discriminating against employees or applicants for employment on the basis of race. See Iowa Code § 216.6(1)(a). As the ICRA was modeled after Title VII of the Civil Rights Act of 1964, Iowa courts often "turn to federal law for guidance" on adjudicating claims under the state employment discrimination statute. Vivian v. Madison, 601 N.W.2d 872, 873 (Iowa 1999). Yet Iowa courts are "not bound by federal law, despite [their] consistent utilization of the federal analytical framework." Pecenka v. Fareway Stores, Inc., 672 N.W.2d 800, 803 (Iowa 2003).

Although both parties agree that Iowa law governs, they disagree about the causal standard we apply to ICRA race discrimination and failure to promote claims at summary judgment. Atrium asserts we must apply the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), whereas Carter argues that, under Iowa law, we are bound to apply the motivating factor analysis developed in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (plurality opinion).

This same disagreement came before the Iowa Supreme Court in Hedlund v. State, but the court declined to address it squarely. 930 N.W.2d 707, 719 (Iowa 2019). Historically, Iowa courts have applied the McDonnell Douglas framework to ICRA claims at summary judgment when there is no direct evidence of discrimination. See, e.g., Smidt v. Porter, 695 N.W.2d 9, 14 (Iowa 2005); Landals v. George A. Rolfes Co., 454 N.W.2d 891, 893 (Iowa 1990). But, in Hawkins v. Grinnell Regional Medical Center, the Iowa Supreme Court held that the court would "no longer rely on the McDonnell Douglas burden-shifting analysis and determinating-factor standard when instructing the jury" in an ICRA case. 929 N.W.2d 261, 272 (Iowa 2019). Instead, courts applying Iowa law must now use the Price Waterhouse motivating factor standard at trial, which permits an employer to assert the defense that it would have made the same employment decision even had it not taken into account the plaintiff's race or membership in another protected class. Id.; see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1017 (2020) (summarizing the Price Waterhouse framework and same-decision affirmative defense). Hedlund, however, reassured courts that Hawkins "did not disturb [the Iowa Supreme Court's] prior law as it applies to summary judgment." Hedlund, 930 N.W.2d at 719 n.8. Accordingly, absent further instruction from the Iowa Supreme Court to the contrary, we will continue to apply the McDonnell Douglas framework to ICRA discrimination claims at summary judgment. Accord Couch v. Am. Bottling Co., 955 F.3d 1106, 1110 (8th Cir. 2020) (reaching this same conclusion).

Under McDonnell Douglas, Carter has the initial burden to establish a prima facie case for his race discrimination and failure to promote claims. See Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011). Successfully doing so "creates a rebuttable presumption of discrimination" and shifts the burden to Atrium to produce "a legitimate, nondiscriminatory reason for its decision." Id. If Atrium provides such a reason, "the presumption disappears" and the burden returns to Carter to present evidence "that the proffered reason was pretext for discrimination." Id. (citing Lake v. Yellow Transp., Inc., 596 F.3d 871, 873–74 (8th Cir. 2010)). The district court

determined that Carter's claims for race discrimination and failure to promote failed at the prima facie stage and that, even if he had met the elements of his prima facie case, he would be unable to establish pretext on this record.

To make out a prima facie case of race discrimination, Carter must show that: (1) he "is a member of a protected class," (2) he met Atrium's "legitimate expectations," (3) he "suffered an adverse employment action," and (4) "the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." Carter v. Pulaski Cnty. Special Sch. Dist., 956 F.3d 1055, 1058 (8th Cir. 2020) (quoting Macklin v. FMC Transp., Inc., 815 F.3d 425, 427 (8th Cir. 2016)). Atrium does not contest that Carter, a Black man whose employment Atrium terminated, has met the first, second, and third elements. The parties disagree only on the fourth element—whether the circumstances warrant an inference of discrimination.

Carter contends the circumstances suggest discrimination because he was disciplined for conduct that Atrium's white employees engaged in with impunity. For example, he asserts he was disciplined for being on Facebook and using his cell phone at work and for failing to account for missing bills from the lobby cash drawer, while other white employees were not. But Carter acknowledges that he was fired over the hotel key incident, rather than as a result of these comparatively minor infractions. He has not presented evidence of any situation in which a white Atrium employee took a hotel room out of service, made a key to it, and then allowed unregistered guests to gain possession of the key, without being fired as a result. Nor is there evidence of white Atrium employees engaging in comparably serious misconduct without experiencing similarly harsh employment consequences. As such, Carter has not shown that similarly situated employees outside of his protected class were treated more favorably than him after engaging in similar misconduct. See Pye, 641 F.3d 1019 (explaining that to be similarly situated employees must be "involved in or accused of the same or similar conduct and . . . disciplined in different

-7-

ways" (cleaned up) (quoting Wimbley v. Cashion, 588 F.3d 959, 962 (8th Cir. 2009))).

Further, although a plaintiff can satisfy the fourth element of the prima facie case with evidence of "biased comments by a decisionmaker," Pye, 641 F.3d at 1019, the racial slurs Carter experienced at Atrium were made by maintenance workers, a fellow Front Desk Clerk, and other unidentified employees, none of whom Carter claims exercised authority over employment decisions at the company. See Lewis v. Heartland Inns of Am., LLC, 591 F.3d 1033, 1041 (8th Cir. 2010) (describing a decisionmaker as someone "with authority to hire and fire employees"). Under these circumstances, Carter has not presented evidence that the context of his termination warrants an inference of discrimination. Summary judgment in favor of Atrium on the race discrimination claim was therefore appropriate.

We next consider whether Carter carried his burden of establishing a prima face case of race discrimination in the context of Atrium's decision not to promote him to Assistant Front Office Manager. In the hiring context, a plaintiff seeking to prove race discrimination must make a prima facie showing that: (1) he "is in a protected class," (2) he "was qualified for [the] position," (3) he "was denied that position," and (4) "[the employer] filled the position with a person not in the same protected class." Nelson v. USAble Mut. Ins. Co., 918 F.3d 990, 993 (8th Cir. 2019) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc)).

Although the parties agree that Carter belongs to a protected class, that he was denied the promotion, and that none of the three individuals Atrium hired for the Assistant Front Office Manager are Black, they dispute whether Carter was qualified for the position. Presumably for this reason the district court assumed without deciding that Carter satisfied his burden of establishing a prima facie case for failure to promote. The court nonetheless entered summary judgment in favor of Atrium

because Carter did not present evidence that the company's stated reason for denying him promotion was pretextual.

Atrium avers that the three individuals it hired for the Assistant Front Office Manager position were more qualified than Carter. This is a satisfactory nondiscriminatory justification for its hiring decision. See Torgerson, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." (quoting Floyd v. Mo. Dep't of Soc. Servs., Div. of Fam. Servs., 188 F.3d 932, 936 (8th Cir. 1999))). The burden thus returns to Carter to present evidence that Atrium's proffered reason for denying him promotion was "a mere pretext for intentional discrimination." Gentry v. Georgia-Pacific Corp., 250 F.3d 646, 650 (8th Cir. 2001).

The record shows that the first of the three Assistant Front Office Managers Atrium hired was a former Atrium employee with a great track record at the company who had left to attend hospitality school. The second had an undergraduate degree in event management. And the third served as a Night Auditor at another hotel for five years, which both parties acknowledge represents management experience. In contrast, Carter had no formal hospitality or event management education, lacked management experience, and received a number of disciplinary write-ups from Atrium before being passed over for promotion. In addition, the record shows that Atrium has hired Black men for the Assistant Front Office Manager position in the past. Even drawing all reasonable inferences in Carter's favor, after a careful review of the record we conclude that he has not presented evidence to show that Atrium's stated reason for declining to promote him was "not the true reason," but rather a "pretext for discrimination." Kim v. Nash Finch Co., 123 F.3d 1046, 1056 (8th Cir. 1997) (quoting Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 256 (1981)). Summary judgment on the failure to promote claim was warranted.

Finally, we examine the district court's entry of summary judgment on Carter's hostile work environment claim. The district court deemed this claim untimely because almost all of the incidents of harassment Carter relies on to support it occurred outside the ICRA's statute of limitations. Under the statute, a plaintiff must file a complaint with the ICRC "within three hundred days after the alleged discriminatory or unfair practice occurred." Iowa Code § 216.15(13). Because Carter filed his complaint with the ICRC on May 10, 2017, any incidents of harassment that occurred before July 15, 2016 are presumptively non-actionable. But even though the vast majority of the discriminatory comments and conduct Carter describes indeed occurred before this date and as such cannot provide an independent factual basis for his hostile work environment claim, we may nonetheless consider "the entire time period of the hostile environment . . . for the purposes of determining liability" so long as he presents evidence of "an act contributing to the claim [that] occur[ed] within the filing period." Farmland Foods, Inc. v. Dubuque Hum. Rts. Comm'n, 672 N.W.2d 733, 741 (Iowa 2003) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).

Carter's letter to the ICRC and his deposition testimony provide at least some evidence of racial harassment that occurred after July 15, 2016, including maintenance workers calling him "boy" throughout his employment with Atrium and using racial slurs on unspecified dates during 2016 and 2017. Although Carter's deposition testimony is to some extent inconsistent with statements he made in his letter to the ICRC, we do not consider it so plainly self-serving or at odds with the letter such that we should discount it. Cf. Stewart v. Rise, Inc., 791 F.3d 849, 861 (8th Cir. 2015) ("We may discount a plaintiff's self-serving affidavit or deposition testimony as a matter of law where it clearly contradicts the plaintiff's earlier testimony under oath and where the plaintiff offers no explanation for the inconsistencies."). Because Carter presented evidence of race-based harassment that occurred within the statute of limitations period, his hostile work environment claim is timely. See Farmland Foods, 672 N.W.2d at 741; Morgan, 536 U.S. at 117.

To establish a hostile work environment, Carter must show that: (1) he "belongs to a protected group," (2) he "was subjected to unwelcome harassment," (3) "the harassment was based on a protected characteristic," and (4) "the harassment affected a term, condition, or privilege of employment." Farmland Foods, 672 N.W.2d at 744. Where, as here, "the harassment [was] perpetrated by a nonsupervisory employee, the plaintiff must [also] show the employer knew or should have known of the harassment and failed to take proper remedial action." Id. (cleaned up) (quoting Stuart v. Gen. Motors. Corp., 217 F.3d 621, 631 (8th Cir. 2000)).

The fourth element of a hostile work environment claim, which requires a plaintiff to show that the "harassment affected a term, condition, or privilege of employment," id., "involves both objective and subjective components," Sandoval v. Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 801 (8th Cir. 2009). Accordingly, to prevail on the claim Carter must demonstrate both that the cumulative use of racial slurs created "an environment that a reasonable person would find hostile or abusive," and that he "subjectively perceive[d] the environment to be abusive." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Construing the evidence favorably to Carter, he has shown that he belongs to a protected group, that he was subjected to unwelcome harassment, and that the harassment was based on a protected characteristic, namely, race. Whether the record contains evidence that the harassment Carter experienced was so severe as to alter the conditions of his employment is a closer question.

The racial slurs Carter describes experiencing at work are inexcusable. We do not question that use of such epithets may form the basis for a successful hostile work environment claim. See Simon Seeding & Sod, Inc. v. Dubuque Hum. Rts. Comm'n, 895 N.W.2d 446, 469–70 (Iowa 2017). But even assuming the racial harassment Carter experienced was "severe or pervasive enough to create an objectively hostile or abusive work environment," his claim falters because he has not shown that he

"subjectively perceive[d] the environment to be abusive." Harris, 510 U.S. at 21; see Gibson v. Concrete Equip. Co., 960 F.3d 1057, 1064 (8th Cir. 2020). Our precedent suggests that conduct which "may have certainly offended" an employee does not necessarily "subjectively alter the conditions of his employment." Anderson v. Durham D&M, L.L.C., 606 F.3d 513, 520 (8th Cir. 2010). Cf. Ellis v. Houston, 742 F.3d 307, 319 (8th Cir. 2014) (finding plaintiffs' testimony that they experienced "anxiety, dread, and panic attacks," that "they felt like they were being treated more like inmates than fellow officers," and that "they had previously enjoyed going to work but now found the job to be depressing and anxiety producing," among other stress and trauma, sufficient to demonstrate that they subjectively perceived "severe and pervasive" harassment). Here, Carter testified that Atrium employees called him by racial slurs on several occasions, and he said that he was offended and bothered by this conduct. But he provides few details about when, where, or in what context the incidents occurred, and he offers no description of how the misconduct impacted his subjective experience in the workplace.

On this record, Carter has not shown that he experienced the workplace as abusive or that he felt that the harassment was so severe that it in effect altered the terms of his employment. As such, he has not satisfied the fourth element of his hostile work environment claim. The district court did not err in granting summary judgment to Atrium.

## IV.

The district court's entry of summary judgment is affirmed.

_____