# IN THE COURT OF APPEALS OF IOWA

No. 21-0775
Filed March 2, 2022


**STACIE CALDWELL,**
        Plaintiff-Appellant,

**vs.**

**CASEY'S GENERAL STORES, INC., CASEY'S MARKETING COMPANY AND CASEY'S RETAIL COMPANY,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.


        Stacie Caldwell appeals the order granting summary judgment for her employer on her claim of sex discrimination. **AFFIRMED.**


        Matthew M. Sahag of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines, for appellant.

        Lindsay A. Vaught and Emily A. Kolbe of Ahlers & Cooney, P.C., Des Moines, for appellee.


        Heard by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Stacie Caldwell appeals the order granting summary judgment in favor of her employer, Casey's Marketing Company,[1] on her claim of discrimination in employment based on her sex. She contends there is a factual dispute over whether a male employee was similarly situated to her. Caldwell claims Casey's differential treatment of that employee is evidence that its reason for terminating her employment was pretext for discrimination. Concluding that no reasonable fact-finder could find Caldwell met her burden on this issue, we affirm the district court.

## I. Background Facts and Proceedings.

Caldwell was hired as an assistant manager at a Casey's convenience store in April 2011. When she began her employment, she signed a form verifying that she had a chance to review the employee handbook and acknowledging her obligation to read and understand the policies outlined in it. The handbook contained the company's non-fraternization policy, which prohibits inappropriate "personal relationships" between supervisors and their direct subordinates. Prohibited personal relationships "include supervisors who regularly socialize with subordinate employees outside of work, dating, shared living accommodations, common-law marriage, or any perceived intimate companionship." The policy

---

[1] Caldwell also named Casey's General Stores, Inc., and Casey's Retail Company as defendants. Casey's Marketing Company and Casey's Retail Company are wholly-owned subsidiaries of Casey's General Stores, Inc. *See* Casey's General Stores, Inc., Annual Report (Form 10-K) p. 4 (June 25, 2021). The defendants' answer states that Caldwell was employed by Casey's Marketing Company, not the other two entities. For purposes of this opinion, we refer to the defendants, either individually or jointly, as "Casey's."

warns that supervisors who "violat[e] the non-fraternization policy or who fail to immediately report involvement in a personal relationship with a subordinate employee will receive corrective action, up to and including termination of employment."

Casey's promoted Caldwell to store manager in March 2017. Adam Bergman, the area supervisor, was Caldwell's direct supervisor. Nathan Aguirre was an assistant manager at the store Caldwell managed and a direct subordinate.

In April 2018, Aguirre informed Bergman that he and Caldwell had an inappropriate sexual relationship in November 2017. Aguirre provided a written statement about his relationship with Caldwell and copies of text messages Caldwell sent him. After an investigation, Casey's terminated Caldwell for violating its non-fraternization policy.

In April 2019, Caldwell filed a petition alleging Casey's violated the Iowa Civil Rights Act (ICRA) by discriminating against her in employment and harassing her based on her age, sex, and disability. Casey's denied Caldwell's claims, stating it terminated Caldwell's employment because she violated its non-fraternization policy. When Casey's moved for summary judgment, Caldwell only resisted on the sex-discrimination claim, arguing Casey's reason for terminating her was pretext for discrimination because it treated her differently than a similarly situated male employee who violated the same policy. But the district court found that Caldwell failed to show Casey's explanation for her termination was pretext for discrimination and granted summary judgment in Casey's favor on all her claims of discrimination and harassment.

## II. Scope and Standard of Review.

We review the grant of summary judgment for correction of errors at law. *See Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). Summary judgment is appropriate when the material facts are undisputed and the moving party is entitled to judgment as a matter of law. *See id.* We view the record in the light most favorable to the nonmoving party, indulging every legitimate inference within reason. *See id.* If reasonable minds could draw different inferences from the record and reach different conclusions, summary judgment is not proper. *See id.*

## III. Sex Discrimination.

The ICRA prohibits firing an employee based on sex. *Deboom v. Raining Rose, Inc.*, 772 N.W.2d 1, 5 (Iowa 2009) (citing Iowa Code § 216.6(1)(a) (2003)). "[T]he legislature's purpose in banning employment discrimination based on sex was to prohibit conduct which, had the victim been a member of the opposite sex, would not have otherwise occurred." *Id.* at 6 (citation omitted). "Because the [ICRA] was modeled after Title VII of the United States Civil Rights Act, we turn to federal law for guidance in evaluating [it]." *Id.* at 10.

Employment discrimination can be shown by either direct or indirect evidence. *See Hedlund*, 930 N.W.2d at 719. Evidence is direct if it shows a specific link between the discriminatory animus and the adverse employment decision. *See id.* at n.7. But such evidence is rare because an employer's discriminatory motive is rarely announced. *See Hamer v. Iowa C.R. Comm'n*, 472 N.W.2d 259, 263 (Iowa 1991); *see also Godfrey v. State*, 962 N.W.2d 84, 123 (Iowa 2021) (Appel, J., dissenting) ("The essential problem in this type of case is that direct evidence of intent to discriminate is almost never available."). When an

employee relies on indirect evidence of discriminatory motive, we use the burden-shifting approach set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).[2]  *See, e.g.*, *McQuistion v. City of Clinton*, 872 N.W.2d 817, 828-29 (Iowa 2015).

Under the burden-shifting approach, an employee has the initial burden of showing a prima facie case of discrimination.  *See Hedlund*, 930 N.W.2d at 720. To establish a prima facie case of discrimination in employment based on sex, Caldwell must show (1) she is a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) the circumstances allow an inference of discrimination.  *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 147-48 (Iowa 2013).  Once a prima facie case is shown, the employer must provide a legitimate nondiscriminatory reason for the adverse employment action.  *See id.* at 148.  If it does so, the burden shifts back to the employee to show the reason is merely pretext for a discriminatory motive.  *See id.*  One way to show pretext is by showing that similarly situated employees were treated differently.  *Wing v. Iowa Lutheran Hosp.*, 426 N.W.2d 175, 180 (Iowa Ct.

---

[2] In *Hawkins v. Grinnell Regional Medical Center*, 929 N.W.2d 261, 272 (Iowa 2019), the Iowa Supreme Court announced that it applies a motivating-factor standard rather than the burden-shifting approach when instructing juries in discrimination cases.  The question of which standard applies to summary judgment has been raised but not decided.  *See Hedlund*, 930 N.W.2d at 720 (declining to decide the issue because Hedlund failed to raise a genuine issue of material fact).  But the *Hedlund* court noted in dicta that *Hawkins* "did not disturb our prior law as it applies to summary judgment."  *Id.* at 720 n.8.  We therefore apply the burden-shifting approach in reviewing the summary judgment ruling before us.  *See, e.g.*, *Carter v. Atrium Hosp.*, 997 F.3d 803, 808 (8th Cir. 2021) (holding that without contrary instruction from the Iowa Supreme Court, the Eighth Circuit will continue to apply a burden-shifting analysis to ICRA discrimination claims at summary judgment); *Watkins v. City of Des Moines*, No. 19-1511, 2020 WL 2988546, at *4 (Iowa Ct. App. June 3, 2020).

App. 1988); *see also Carter*, 997 F.3d at 809 (listing different treatment of similarly situated employees outside the protected class as one example of evidence giving rise to an inference of discrimination under the ICRA).

In response to Caldwell's claim that her termination stemmed from sex discrimination Casey's asserted a legitimate nondiscriminatory reason for her firing: Caldwell's violation of its non-fraternization policy. The question is whether, viewing the evidence in the light most favorable to Caldwell, reasonable minds could conclude Casey's explanation is pretext for discrimination. Caldwell seeks to meet this burden by showing that Casey's treated Aguirre differently. She claims that while Aguirre was an assistant manager at Casey's, he had personal relationships with subordinate employees and that Casey's did not terminate Aguirre when it learned of this behavior.

The undisputed facts show that in January 2017, Bergman learned of a potential relationship between Aguirre and K.R., a subordinate employee. Both Aguirre and K.R. admitted that their relationship began several months before Bergman was informed, but Bergman's knowledge of that is disputed.[3] The parties

---

[3] According to K.R., it "seemed like" Bergman knew her relationship with Aguirre predated January 2017. When asked in his deposition if he "acknowledge[d] to [Bergman] that [he] did in fact have . . . a personal relationship with [K.R.] at that time," Aguirre replied, "Yes," but Aguirre confirmed he did not tell Bergman that the relationship "had been happening for a period of time." And Bergman signed an affidavit stating that in January 2017, a store manager informed him only that Aguirre and K.R. "had a mutual desire to pursue a relationship."

K.R. also claims that Aguirre told her he had relationships with several other subordinate employees while working for Casey's that she believes Bergman knew about because Aguirre told her he had been transferred several times as a result. Aguirre admits he transferred stores several times during his employment with Casey's, but he provided various reasons for those that are unrelated to the non-fraternization policy. Bergman denies knowledge of any other relationships between Aguirre and a subordinate employee until April 2018.

agree that Bergman responded by stating either Aguirre or K.R. would need to quit or transfer to a different store to avoid violating the non-fraternization policy, and K.R. was transferred.

Bergman next learned that Aguirre was dating a subordinate employee in April 2018. Aguirre told Bergman that he was dating C.M., one of his store's employees. He also told Bergman that he and Caldwell had engaged in a sexual relationship in November 2017. In a written statement Aguirre provided to Bergman, he stated that when he tried to end things with Caldwell, she "would not accept the truth and she tried to continue talking to me in a[n] unprofessional manner." He alleged that afterward, "[Caldwell] began treating me poorly and I no longer felt comfortable at work." Aguirre finally went to Bergman because he believed Caldwell was harassing C.M. and Aguirre wanted to protect C.M.'s job. The next day, Casey's terminated Aguirre for violating the non-fraternization policy based on his relationship with C.M.

Viewing the evidence in the light most favorable to Caldwell, there is a dispute over whether Casey's treated Aguirre differently for violating the non-fraternization policy. Although Casey's terminated Aguirre in April 2018 for violating the policy with C.M., there is a question over whether Casey's knew in January 2017 that Aguirre violated the policy with K.R; K.R. believes Bergman knew her relationship with Aguirre began before January 2017, and Aguirre agrees that he told Bergman in January 2017 that he "did in fact have" a relationship with K.R. Although the evidence is scant, reasonable minds could reach different conclusions when indulging every legitimate inference in Caldwell's favor.

But whether Caldwell and Aguirre were treated differently is relevant only if the two were similarly situated. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) ("Instances of disparate treatment can support a claim of pretext, but [the plaintiff] has the burden of proving that he and the disparately treated . . . were 'similarly situated in all relevant respects.'" (citation omitted)); *cf. Varnum v. Brien*, 763 N.W.2d 862, 882 (Iowa 2009) ("[I]f plaintiffs cannot show as a preliminary matter that they are similarly situated, courts do not further consider whether their different treatment under a statute is permitted under the equal protection clause."). The test to determine whether employees are similarly situated is a "rigorous" one. *Beasley v. Warren Unilube, Inc.*, 933 F.3d 932, 938 (8th Cir. 2019) (citation omitted). The compared employee must be "similarly situated in all relevant respects," meaning "that the plaintiff and the potential comparators must have 'dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Id.* (citation omitted).

Applying this test to the facts, the district court determined that Caldwell failed to show Aguirre was a similarly situated employee for comparison purposes. Caldwell, as store manager, had a different position and different responsibilities than Aguirre, an assistant manager. And although they were both subject to Casey's non-fraternization policy, the circumstances of their violations differed; Aguirre alleged that Caldwell continued to pursue a relationship with him after he ended it and treated him poorly, while K.R. made no such claims about Aguirre. The district court correctly applied the test in determining Caldwell fails to show Aguirre was similarly situated.

Caldwell argues that summary judgment is inappropriate because whether Aguirre is similarly situated is a question of fact for the jury to decide. She relies on our unpublished decision in *Wyngarden v. State Judicial Branch*, No. 13-0863, 2014 WL 4230192, at *9 (Iowa Ct. App. Aug. 27, 2014), which cites *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009), for the proposition that the determination of whether an employee is similarly situated is "usually a question for the factfinder." But this alone provides an insufficient basis to survive summary judgment. As the court in *Srail* then states, "summary judgment is appropriate when no reasonable fact-finder could find that plaintiffs have met their burden on the issue." 588 F.3d at 945; *accord Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) ("There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.").

Caldwell produced no other evidence to show that Casey's decision to terminate her was pretext for discrimination. Rather, Casey's showed that during the period it employed Caldwell, it terminated two other male supervisors who violated the non-fraternization policy in like manner. On this basis, the district court found that "the record is barren of any evidence Casey's reasons for termination were false." We agree.

Caldwell failed her burden of generating a question of fact over whether Casey's legitimate nondiscriminatory reason for terminating her was pretext for discrimination. As a result, Casey's is entitled to summary judgment in its favor. We therefore affirm the order granting summary judgment in Casey's favor.

**AFFIRMED.**