# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2537
_____

Michelle L. Brandt

*Plaintiff - Appellant*

v.

City of Cedar Falls; Lisa Roeding; Jacque Danielson; John Bostwick; Jeff Olson;
Jennifer Rodenbeck

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: January 13, 2022
Filed: June 14, 2022
_____

Before BENTON, SHEPHERD, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Michelle Brandt, a former part-time employee of the City of Cedar Falls,
brought this action against the City of Cedar Falls and certain city officials after her
2018 termination, alleging interference with and retaliation for exercise of her rights
under the Family and Medical Leave Act (FMLA) and claims of age discrimination,
disability discrimination, hostile work environment, and retaliation under the Iowa

Civil Rights Act (ICRA). The district court[1] granted summary judgment in favor of defendants on all of Brandt's claims, and Brandt appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Brandt began her employment as a part-time employee with the City of Cedar Falls in 2001, serving in various part-time positions until her termination in 2018. Brandt worked in several city departments, including the Public Safety, Community Development, Business, Housing Assistance, Fire, and Police Departments, most commonly as a secretary and administrative clerk. Between 2014 and 2017, Brandt applied for at least five different administrative clerk positions in different city departments, three of which were full-time positions; however, Brandt was never successful in any of these applications, which she attributes to being passed over in favor of younger, less qualified candidates.

Beginning in 2007, Brandt requested and was granted FMLA leave on several occasions. Brandt's leave requests became more frequent in the summer of 2016, when Brandt began attending medical appointments related to her temporomandibular joint dysfunction (TMJ).[2] In October 2017, Brandt submitted another FMLA leave request, this time related to her anxiety, depression, and attention deficit hyperactivity disorder. Brandt's treating psychiatrist opined that, due to her mental health conditions, Brandt required a ten-minute break every two hours during the workday. Brandt requested that she receive two 10-minute breaks as a form of intermittent FMLA leave, and while the City granted this request, it required Brandt to arrive at work 5 minutes early to make up for the discrepancy in

---

[1]The Honorable C.J. Williams, United States District Judge for the Eastern District of Iowa.

[2]TMJ is "a condition that can affect the jaw by causing popping, clicking, muscular dysfunction, and pain. It can also affect the ability to speak." Ehlers v. Univ. of Minn., No. 21-1606, 2022 WL 1572397, at *1 (8th Cir. May 19, 2022).

time between her requested breaks and the 15-minute break time already allotted to her as a regular part of her employment. Finally, in January 2018, Brandt requested FMLA leave to care for her elderly mother.

In 2016, Brandt began splitting her time between the Fire, Business, and Police Departments, and, by May 2016, was splitting her time between the Fire Department and the Section 8 Housing Assistance Division. The same month that she began working at the Housing Assistance Division, Brandt requested a meeting with defendants Lisa Roeding, Jacque Danielson, and John Bostwick, who were serving as the Manager of Finance and Business Operations, the Senior Secretary and later City Clerk for Cedar Falls, and the acting Fire Chief and Assistant Director of Public Safety, respectively. Brandt requested this meeting to discuss why she was being passed over for full-time positions.

Brandt asserts that, after this meeting, "things started to go wrong." She testified that she believed Bostwick may have instructed staff to find errors in her work, and she began receiving negative performance evaluations for the first time since beginning her employment with the City. On July 5, 2016, while Brandt was working in the Housing Assistance Division, defendant Jeff Olson, the Public Safety Director for the City, served her with a Counseling Memo that detailed issues with her performance, including that she was unproductive and rude to the public, and, on one occasion, she improperly closed the office. Brandt provided a written response to the memo, detailing her belief that the accusations were inaccurate and unfair but acknowledging that she was experiencing a transition period in this new position, and she was taking a medication that could be affecting her mood. In late August 2016, Brandt was transferred to the Business Department, and on May 26, 2017, Roeding and defendant Jennifer Rodenbeck, the Director of Finance and Business Operations, gave Brandt an Employee Disciplinary Report and issued a verbal reprimand. The report, which Roeding authored, detailed Brandt's performance deficiencies over the previous year, specifically citing issues with attention to detail and productivity, and noted that Roeding met with Brandt on several occasions throughout the year to discuss Brandt's performance issues. At a

meeting to discuss this disciplinary report, Brandt again cited medication as causing a change in her moods. Brandt provided a full list of her medications to Roeding and Rodenbeck, who forwarded the list to the city attorney. Brandt testified that the city attorney determined that none of her listed medications caused side effects capable of causing her performance issues.

On September 1, 2017, Roeding and Rodenbeck issued a second Employee Disciplinary Report, again identifying numerous performance deficiencies, such as accounting errors, typos, and rude behavior. Roeding and Brandt had a meeting to discuss this disciplinary report. On December 19, 2017, Roeding and Rodenbeck issued a third Employee Disciplinary Report to Brandt and imposed a one-day suspension. This third report detailed 14 performance-based deficiencies, including errors, oversights, and lack of attention to detail. This report also noted that on two occasions Brandt was late for work, having failed to report to work five minutes early as she had been directed. Again, Roeding and Rodenbeck met with Brandt to discuss the third disciplinary report. On January 4, 2018, Brandt submitted a written response to all three of her disciplinary reports, challenging the basis for the identified performance deficiencies. In her response, Brandt asserted that the identified deficiencies were overstated, inaccurate, generally unfair, and resulted from insufficient instruction and training or time constraints. She also accused her co-workers of treating her rudely or in an overly harsh manner but acknowledged that she had made a series of errors and identified areas in which she believed that she could improve.

On March 2, 2018, Roeding and Rodenbeck held another meeting with Brandt during which they issued Brandt a fourth and final Employee Disciplinary Report and informed Brandt that they were terminating her employment, effective as of that date. This final report detailed Brandt's failure to correct her numerous, previously identified performance deficiencies, specifically her overall failure to perform her job at an acceptable level, with efficiency, and within the established guidelines and standards as required by her position. Brandt left the office immediately following this meeting and did not file any written response to this final disciplinary report.

Brandt later testified that she was surprised by her termination and the final disciplinary report because she was under the impression that her performance had been improving. She also testified that she did not recall her age or any disability being discussed during the termination meeting, although she recalled that she might have mentioned in previous meetings her medical conditions and her difficulty in learning new tasks through reading instructions, which was the way she was typically instructed when performing new tasks during her employment with the City.

Brandt also testified that defendants were hostile to her requests for FMLA leave, asserting that, after she returned from FMLA leave in 2007, she overheard Danielson say to a co-worker, "I can't do anything about it until the doctor signs her off." Although Brandt conceded that the comment was not directed at her and she did not know what it was about, she assumed that it was about her and testified that she felt intimidated. Brandt further testified that she was subjected to other forms of harassment during the course of her employment. Brandt specifically testified that on one occasion, Bostwick called her an "old hag," and, on a couple of occasions, flung rubber bands and paper clips onto her desk. Brandt also testified that she got the impression from her co-workers that they believed that she could not learn as quickly or perform as well as a younger person and, that by mid-2017, most of her co-workers would not greet her when she arrived at work. Brandt also identified an instance in which two co-workers made barking noises and laughed, which she assumed was directed at her after she made eye contact with Bostwick.

Roughly three months after her termination, Brandt filed a complaint with the Iowa Civil Rights Commission (ICRC) asserting several claims: failure to accommodate, failure to promote, undesirable transfer, failure to train, improper discipline, improper termination, unequal pay, harassment, suspension, and retaliation. After the ICRC administratively closed the case, Brandt filed this action in Iowa state court against the City of Cedar Falls, Roeding, Danielson, Bostwick, Olson, and Rodenbeck, alleging violation of her FMLA rights, and age discrimination, disability discrimination, hostile work environment, and retaliation,

in violation of the ICRA.  After removing the case to federal court, defendants filed a motion for summary judgment, which the district court granted.

As to Brandt's FMLA claims, the district court evaluated both an interference and retaliation claim.  On the interference claim, the district court concluded that, while a reasonable jury could find that requiring Brandt to report to work five minutes early amounted to interference with the exercise of her FMLA rights, defendants were entitled to summary judgment because Brandt failed to show an entitlement to damages.  The district court concluded that Brandt failed make this showing because she did not seek damages for time she says should have been counted toward FMLA leave and nominal damages are generally unrecoverable in an FMLA action.  The district court also concluded that, applying the McDonnell Douglas[3] burden-shifting framework, Brandt failed to make a prima facie showing of FMLA retaliation because she could show no causal connection between her FMLA leave and her termination.  The district court further concluded that, even if Brandt made a prima facie showing, she failed to prove that defendants' proffered reason for their actions—Brandt's performance deficiencies—was pretextual.

As to Brandt's ICRA age and disability discrimination and retaliation claims, the district court determined that, insofar as they were based on a failure to promote, the claims were time-barred because Brandt's last application for a full-time position was outside of the ICRA statute of limitations period.  As to the merits of these claims, the district court determined that Brandt failed to make a prima facie case under the McDonnell Douglas framework, which this Court has dictated applies to ICRA claims at summary judgment.  See Carter v. Atrium Hosp., 997 F.3d 803, 808 (8th Cir. 2021).  Further, the district court concluded that, even if Brandt were able to present a prima facie case, she provided no evidence of pretext to rebut defendants' legitimate, nondiscriminatory reason underlying their actions—Brandt's documented history of performance deficiencies.  Finally, as to the hostile work environment claim, the district court concluded that this claim was also time-barred

_____

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

-6-

because Brandt had not alleged any harassing acts within the ICRA statute of limitations period. Alternatively addressing the merits, the district court concluded that the undisputed facts demonstrated that defendants' actions were not motivated by age- or disability-related animus. Brandt now appeals the adverse grant of summary judgment as to all claims except the ICRA retaliation claim.

## II.

Brandt asserts that the district court erred in granting summary judgment on each of her claims. "We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party." Wages v. Stuart Mgmt. Corp., 798 F.3d 675, 679 (8th Cir. 2015). We address each claim in turn.

## A.

Brandt asserts that the district court erroneously granted summary judgment in favor of defendants on her FMLA claims. Under the FMLA, which entitles an employee to 12 work weeks of leave during any 12-month period for a serious health condition, 29 U.S.C. § 2612(a)(1)(D), an employee can bring two types of claims against her employer: "(1) 'interference' claims where the employee alleges that the employer denied or interfered with her substantive rights under the FMLA; and (2) 'retaliation' claims where the employee alleges that the employer discriminated against her for exercising her FMLA rights." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011) (citation omitted). Brandt argues that the district court erred in granting summary judgment on her interference claim because the facts demonstrate that Brandt is entitled to damages and the law allows nominal damages. Brandt further argues that the district court erred in granting summary judgment on her retaliation claim because the defendants did not carry their burden of proof and the district court failed to properly account for the effect that the FMLA interference had on Brandt's termination.

First, as to the interference claim, to succeed, Brandt "must prove the following: '(1) [she] was an eligible employee; (2) [defendant] was an employer as defined by the FMLA; (3) [she] was entitled to FMLA leave; (4) [she] gave [defendant] notice of [her] intent to take FMLA leave; and (5) [defendant] denied [her] FMLA benefits to which [she] was entitled.'" Hernandez v. Bridgestone Ams. Tire Operations, LLC, 831 F.3d 940, 945 (8th Cir. 2016) (per curiam) (citation omitted). In addition to showing the substantive elements of a claim, "[i]n an action brought under the FMLA, 'a plaintiff must be able to show a reasonable likelihood that a rational trier of fact would award . . . damages or find [an entitlement] to injunctive relief to avoid the entry of summary judgment.'" McBurney v. Stew Hansen's Dodge City, Inc., 398 F.3d 998, 1002 (8th Cir. 2005) (second and third alterations in original) (citation omitted). Remedies available under the FMLA are limited to "compensation and benefits lost 'by reason of the violation,' . . . other monetary losses sustained 'as a direct result of the violation,'. . . and 'appropriate' equitable relief, including employment, reinstatement, and promotion." Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002) (citations omitted).

Here, we need not consider the substantive elements of the claim because Brandt has failed to demonstrate that she sustained any recoverable damages and it is undisputed that Brandt did not seek any form of equitable relief. At oral argument on defendants' summary judgment motion, Brandt's counsel stated the following in response to a question from the district court about whether Brandt was seeking monetary damages for the time that she should have been granted FMLA leave but was instead required to come in early:

> I don't believe we're necessarily seeking monetary damages. I'm not entirely sure what monetary damages, other than maybe liquidated damages. . . . I can't necessarily say . . . we . . . read the complaint to say that we're seeking monetary damages necessarily for the time she wasn't given.

R. Doc. 45, at 51. Just as the district court took this statement as a disclaimer of actual damages, so do we.[4] With no claim for actual damages and no claim for equitable relief, that leaves us with only the question of whether Brandt may recover nominal damages for interference with her FMLA rights. We conclude that she may not. Although this Court has not yet addressed the recoverability of nominal damages in an FMLA action, we join our sister circuits that have concluded that nominal damages are not recoverable because they are not included in the specific, statutorily prescribed damages under the FMLA. See, e.g., Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1278 (10th Cir. 2001) ("Because nominal damages are not included in the FMLA's list of recoverable damages, nor can any of the listed damages be reasonably construed to include nominal damages, Congress must not have intended nominal damages to be recoverable under the FMLA."); see also Montgomery v. Maryland, 72 F. App'x 17, 19 (4th Cir. 2003) ("[Plaintiff] alleged no lost wages or cost of care, focusing instead on emotional distress, which, along with nominal and consequential damages, is not covered under the [FMLA].");

---

[4]The district court also concluded that Brandt failed to show she could recover damages stemming from her termination, so the only inquiry as to damages was whether Brandt showed she was entitled to damages for the interference with her FMLA rights in the form of requiring Brandt to report to work five minutes early. As to whether Brandt's tardiness played any role in her termination, the district court specifically stated that

> although plaintiff's tardiness was cited in the disciplinary reports, they constituted only a small fraction of the overall violations. A reasonable jury could not award plaintiff damages for her termination by simply ignoring the vast majority of the cited violations and emphasizing the few instances of tardiness that occurred in the last months of her employment.

R. Doc. 38, at 35-36. We agree with the district court that Brandt failed to show she could recover damages related to her termination because her tardiness was not the reason for her termination. Like the district court, we thus consider only whether Brandt has shown she is entitled to damages as it relates to the additional time Brandt was required to work to make up for her requested intermittent leave.

Cianci v. Pettibone Corp., 152 F.3d 723, 729 (7th Cir. 1998) (concluding that plaintiff failed to show damages to sustain FMLA claim where she did not suffer any diminution of income, incur any costs as a result of the alleged FMLA violation, or seek any equitable remedies).[5]  The district court thus properly granted summary judgment in favor of defendants on Brandt's FMLA interference claim.

Second, as to the retaliation claim, we apply the McDonnell Douglas burden-shifting framework, which requires a plaintiff to make a prima facie showing of retaliation before the burden shifts back to the employer to offer a legitimate, non-discriminatory reason for its actions.  See Wierman, 638 F.3d at 999.  If the employer meets this burden, the burden shifts again to the plaintiff to show that the reason offered by the employer is pretextual.[6]  Id.  To establish a prima facie case of FMLA retaliation, Brandt must show: "1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially adverse employment action was causally linked to the protected conduct."  Id.  Even

_____

[5]Brandt's reliance on Uzuegbunam v. Preczewski, 141 S. Ct. 792 (2021), as dictating that nominal damages are recoverable under the FMLA is misplaced. There, the Supreme Court considered only whether a request for nominal damages satisfies the redressability requirement for Article III standing.  Id. at 796.  It said nothing about whether nominal damages are recoverable in the face of the comprehensive FMLA statutory scheme that specifically delineates the types of damages recoverable in an FMLA action.

[6]To the extent that Brandt asserts that, relying on Throneberry v. McGehee Desha County Hospital, 403 F.3d 972, 979 (8th Cir. 2005), the employer bears the burden of proving that the employee would have been terminated regardless of taking FMLA leave or making a request for leave, that reliance is misplaced because Throneberry considers an FMLA interference claim, to which the McDonnell Douglas burden-shifting framework does not apply, and does not consider an FMLA retaliation claim, to which the McDonnell Douglas framework applies.  See Lovland v. Emps. Mut. Cas. Co., 674 F.3d 806, 811 (8th Cir. 2011) ("[W]hen the employee asserts [an FMLA interference claim] we have held that the employer's intent in denying the benefit is immaterial; by contrast, a retaliation claim . . . requires proof of an impermissible discriminatory animus, typically with evidence analyzed under the McDonnell Douglas burden-shifting framework.").

assuming that Brandt establishes a prima facie case, defendants offer a legitimate, non-discriminatory reason for her termination—her myriad performance deficiencies—and Brandt has wholly failed to show pretext.

"An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case . . . because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." Phillips v. Mathews, 547 F.3d 905, 912-13 (8th Cir. 2008) (citation omitted). We have recognized several ways in which a plaintiff may prove pretext:

> by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before [s]he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

Id. at 913 (citation omitted). Brandt has failed to put forth any evidence of the kind that would demonstrate pretext. Brandt offers nothing more than disagreement with the statements contained in the disciplinary reports. In the absence of any factual record demonstrating that these documented performance deficiencies were inaccurate, Brandt has failed to meet her burden of demonstrating pretext. The district court thus did not err in granting summary judgment to defendants on Brandt's FMLA retaliation claim.

B.

Next, Brandt appeals the district court's grant of summary judgment to defendants on her age and disability discrimination claims, arguing that the district court erroneously applied the McDonnell Douglas framework to her claims and further erred in concluding that Brandt failed to make a prima facie showing or demonstrate pretext on both claims. Brandt's argument regarding the applicability

of the <u>McDonnell Douglas</u> framework is squarely foreclosed by this Court's previous directive that "absent further instruction from the Iowa Supreme Court to the contrary, we will continue to apply the <u>McDonnell Douglas</u> framework to ICRA discrimination claims at summary judgment." <u>Carter</u>, 997 F.3d at 808.

We first note that any claim of age or disability discrimination based on an alleged failure to promote is untimely. Under Iowa law, these claims are subject to a 300-day limitations period. Iowa Code § 216.15(13). Brandt submitted her last application for a full-time position in May 2017, and the only record evidence of any application submitted after this date is Brandt's own deposition where she speculated that she "possibly" submitted her last application for a full-time position in December 2017. Such speculation is insufficient to bring her claim within the limitations period. <u>See</u> <u>Bloom v. Metro Heart Grp. of St. Louis, Inc.</u>, 440 F.3d 1025, 1028 (8th Cir. 2006) ("[S]peculation and conjecture are insufficient to defeat summary judgment."). As Brandt has failed to identify any position she applied for after August 8, 2017, her claims based on a failure to promote are time-barred.

Next, applying the <u>McDonnell Douglas</u> framework to Brandt's age discrimination claim, Brandt was required to make a prima facie showing that: she (1) was a member of a protected class; (2) suffered an adverse employment action; (3) was performing adequately or qualified for the job at the time of the adverse employment action; and (4) was replaced by someone substantially younger, so as to permit an inference of age discrimination. <u>Mormann v. Iowa Workforce Dev.</u>, 913 N.W.2d 554, 576 (Iowa 2018). And to make a prima facie case of disability discrimination under the <u>McDonnell Douglas</u> framework, Brandt must show: "(1) [s]he has a disability, (2) [s]he is qualified to perform the essential functions of the . . . position, and (3) the circumstances of [her] termination raise an inference of illegal discrimination." <u>Goodpaster v. Schwan's Home Serv., Inc.</u>, 849 N.W.2d 1, 6 (Iowa 2014). Successfully showing a prima facie case "'creates a rebuttable presumption of discrimination' and shifts the burden to [defendants] to produce 'a legitimate, nondiscriminatory reason for its decision.'" <u>Carter</u>, 997 F.3d at 808 (citation omitted). Where defendants proffer such a reason, "'the presumption

-12-

disappears' and the burden returns to [the plaintiff] to present evidence 'that the proffered reason was pretext for discrimination.'" Id. at 808-09.

As with Brandt's FMLA retaliation claim, we need not consider Brandt's ability to make a prima facie showing because, even assuming that she is able to clear this initial hurdle, defendants offer a legitimate, non-discriminatory reason for terminating Brandt—her documented history of deficient performance—and Brandt offers no evidence demonstrating that this reason is a pretext for discrimination. Brandt offers nothing more than speculation and her own suppositions about the veracity of the disciplinary reports. This is insufficient to demonstrate pretext. Even considering the facts in the light most favorable to Brandt and drawing all reasonable inferences in her favor, Brandt has failed to provide any record evidence to show that defendants' proffered reason for her termination "was 'not the true reason,' but rather a 'pretext for discrimination.'" Id. at 810 (citation omitted). The district court thus did not err in granting summary judgment in defendants' favor on Brandt's ICRA age and disability discrimination claims.

C.

Finally, Brandt asserts that the district court erred in granting summary judgment to defendants on her ICRA hostile work environment claim. Under the ICRA, to establish a hostile work environment claim, "the plaintiff must show: (1) he or she belongs to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment." Haskenhoff v. Homeland Energy Sols., LLC, 897 N.W.2d 553, 571 (Iowa 2017) (citation omitted). However, before a plaintiff may pursue an ICRA claim, she must file a timely charge with the ICRC, and the ICRA imposes a 300-day limitations period for filing a claim. Iowa Code § 216.15(13) ("[A] claim under [the IRCA] shall not be maintained unless a complaint is filed with the commission within three hundred days after the alleged discriminatory or unfair practice occurred."). As the district court noted, based on the date that Brandt filed her complaint with the ICRC, to survive summary

judgment on this claim, Brandt would have had to allege that she suffered from harassing acts based on her age or disability after August 8, 2017. She failed to do so. Brandt's primary claims of harassment—being called an "old hag," receiving unfriendly or mocking treatment from co-workers, and having items flung at her in her desk area—undisputedly occurred prior to August 8, 2017.

In an effort to save her claim, Brandt asserts that her claim falls within the limitations period because she received three disciplinary reports after August 8, 2017—on September 1, 2017, December 19, 2017, and March 2, 2018—and, under the continuing violation doctrine, these reports serve to revive all the otherwise untimely claims of harassment. The continuing violation doctrine "allows courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 107 (2002) (citation omitted). An otherwise untimely claim will not be barred under the continuing violation doctrine "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Id. at 122. Here, while Brandt received three disciplinary notices after August 8, 2017, the content of these notices, when read in the proper context, demonstrate that they did not bear any relationship to Brandt's age or disability; rather, they focused on her performance issues.[7] We agree with the district court that no reasonable jury could infer that the disciplinary reports were motivated by defendants' purported discriminatory intent. As such, the continuing violation doctrine is inapplicable; Brandt has failed to show that the final three disciplinary reports were part of the same unlawful employment practice—harassment based on her age and disability. Brandt's claim of a hostile work environment is thus time-barred, and the district court did not err in granting summary judgment to defendants.

---

[7]Although Brandt's tardiness was cited in her disciplinary reports, we agree with the district court that Brandt's performance issues, not her attendance, were the reason for her termination. See supra note 4.

-14-

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____